01
02
03
04
05
06
07
08
09
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KIM L. JOHNSON,                          )    Case No. C08-503-RSM-JPD
                                         )
                Plaintiff,               )
                                         )
        v.                               )
                                         )
                                         )    REPORT AND RECOMMENDATION
MICHAEL J. ASTRUE, Commissioner,         )
Social Security Administration,          )
                                         )
                Defendant.               )
_____)

        Plaintiff Kim Johnson appeals the final decision of the Commissioner of the Social

Security Administration ("Commissioner") which denied her applications for Disability

Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-33

after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below,

the Court recommends that the Commissioner's decision be AFFIRMED and this case be

dismissed with prejudice.

                        I.  FACTS AND PROCEDURAL HISTORY

        Plaintiff is a forty-four year old woman who is a high school graduate and has at least

one year of college education. Administrative Record ("AR") at 48, 58. Her past work

experience includes employment as a secretary. AR at 53  Plaintiff was last gainfully

employed in 1996. *Id*.

REPORT AND RECOMMENDATION
PAGE – 1

Plaintiff is now disabled due to multiple sclerosis. AR at 17. The issue before the Court is whether she was disabled prior to her date last insured ("DLI") of December 31, 2001. She asserts an onset date of November 1, 2001. AR at 45, 90.

The Commissioner denied plaintiff's claim initially and on reconsideration. Plaintiff requested a hearing, which took place on August 17, 2006. AR at 466-91. On December 15, 2006, the ALJ issued a decision finding plaintiff not disabled as of her DLI and denied benefits. AR at 12-21.

Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council on February 8, 2008, AR at 7-8, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). Plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. No. 3.

## II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir.

01 2002). When the evidence is susceptible to more than one rational interpretation, it is the

02 Commissioner's conclusion that must be upheld. *Id.*

03       The Court may direct an award of benefits where "the record has been fully developed

04 and further administrative proceedings would serve no useful purpose." *McCartey v.*

05 *Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273,

06 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the
> claimant's evidence; (2) there are no outstanding issues that must be resolved
> before a determination of disability can be made; and (3) it is clear from the
> record that the ALJ would be required to find the claimant disabled if he
> considered the claimant's evidence.

10 *Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that

11 erroneously rejected evidence may be credited when all three elements are met).

## IV. EVALUATING DISABILITY

13       As the claimant, Ms. Johnson bears the burden of proving that she is disabled within

14 the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113

15 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to

16 engage in any substantial gainful activity" due to a physical or mental impairment which has

17 lasted, or is expected to last, for a continuous period of not less than twelve months. 42

18 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her

19 impairments are of such severity that she is unable to do her previous work, and cannot,

20 considering her age, education, and work experience, engage in any other substantial gainful

21 activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v.*

22 *Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

23       The Commissioner has established a five step sequential evaluation process for

24 determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§

25 404.1520, 416.920. The claimant bears the burden of proof during steps one through four.

26 At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled

01   at any step in the sequence, the inquiry ends without the need to consider subsequent steps.

02        Step one asks whether the claimant is presently engaged in "substantial gainful

03   activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If she is, disability benefits are denied. If

04   she is not, the Commissioner proceeds to step two. At step two, the claimant must establish

05   that she has one or more medically severe impairments, or combination of impairments, that

06   limit her physical or mental ability to do basic work activities. If the claimant does not have

07   such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant

08   does have a severe impairment, the Commissioner moves to step three to determine whether

09   the impairment meets or equals any of the listed impairments described in the regulations. 20

10   C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the

11   listings for the required twelve-month duration requirement is disabled. *Id.*

12        When the claimant's impairment neither meets nor equals one of the impairments

13   listed in the regulations, the Commissioner must proceed to step four and evaluate the

14   claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e).

15   Here, the Commissioner evaluates the physical and mental demands of the claimant's past

16   relevant work to determine whether she can still perform that work. 20 C.F.R. §§

17   404.1520(f), 416.920(f). If the claimant is able to perform her past relevant work, she is not

18   disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to

19   show that the claimant can perform other work that exists in significant numbers in the

20   national economy, taking into consideration the claimant's RFC, age, education, and work

21   experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the

22   Commissioner finds the claimant is unable to perform other work, then the claimant is found

23   disabled and benefits may be awarded.

24

25

26

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

## V. DECISION BELOW

On December 15, 2006, the ALJ issued a decision finding the following:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2001.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of November 1, 2001 through her date last insured of December 31, 2001 (10 CFR 404.1520(b) and 404.1571. *et seq.*).

3. Through the date last insured (December 31, 2001), the claimant had the following severe impairments: multiple sclerosis (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that, through the date last insured (December 31, 2001), the claimant had the residual functional capacity to perform light work; could never climb ladders, ropes or scaffolds; could occasionally climb ramps/stairs; balance, stoop; kneel; crouch; and crawl and had environmental limitations of the need to avoid all exposure to extreme heat and avoid concentrated exposure to vibration and hazards (machinery, heights, etc.).

6. Through the date last insured, the claimant's past relevant work as life insurance secretary did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant was not under a "disability," as defined in the Social Security Act, at any time from November 1, 2001, the alleged onset date, through December 31, 2001, the date last insured (20 CFR 404.1520(f)).

AR at 14-20.

## VI. ISSUES ON APPEAL

The ALJ found that plaintiff is presently disabled due to her multiple sclerosis. However, the legal issue presented is whether she was disabled prior to her DLI. The ALJ concluded the answer was no. The principal issues on appeal are:

1. Did the ALJ err in his evaluation of the medical evidence? and

01        2.     Did the ALJ err by not calling a medical expert at the hearing?

02 Dkt. No. 14 at 10.

### VII.  DISCUSSION

04        1.     <u>The ALJ Did Not Err in His Evaluation of the Medical Evidence</u>

As noted above, plaintiff's DLI was December 31, 2001. Some eleven months later, on November 26, 2002, Jeffrey Dunn, M.D., performed a thorough neurological examination, which included the following description of Plaintiff's multiple sclerosis:

> In June of 1999, Copaxone was initiated as immunomodulatory therapy and the patient was doing so well that she unilaterally began to use Copaxone less frequently through the period of December of 2001 and June of 2002. Until the end of this period, the patient reports feeling generally normal neurologic function with minimal visual symptoms and mild fatigue. She was, however, able to walk generally uncompromised distances such as in shopping.

> In May of 2002, however, the patient developed a significant viral-like syndrome or flu, and, in association with this, began to notice a clear decrease in equilibrium. This led to a greater degree of gait disturbance. The patient now reports that she has a stiff-legged walk and reports symptoms of muscles tightness and aching discomfort in the lower extremities. Through the summer of 2002, she continued to have significant gait abnormalities and, in the last 3 months, has noticed a tendency toward tripping over her right foot. She is able to walk on occasion one hour at one time, but with some weakness in the right lower extremity and with symptoms of muscle tightness and myalgia. This represents a clear decline from the patient's previous baseline prior to May of 2002.
> . . .

> The patient has 2 children and an active lifestyle. She has not yet had to change day-to-day activities because of increasing multiple sclerosis related symptoms.

AR at 177, 179.

When the plaintiff initially applied for disability benefits, she crossed out information relating to the date she was last able to work, and made a hand-written insertion of July 2002. AR at 48, 52. After her case was dismissed because this was beyond her DLI, the application was amended to assert that she was unable to work as of November 2001. At her hearing, she explained this change by stating that when she initially filled out the form, she did not think that "tiredness counted." AR at 475.

REPORT AND RECOMMENDATION
PAGE – 6

All of the evidence in this case supports the ALJ's determination that the plaintiff's condition did not reach the level of total disability until after her DLI.  For support of her claim, plaintiff cites to a  multiple sclerosis residual functional capacity questionnaire (MSRFC) prepared by Dr. Dunn on March 18, 2005.  AR at 283-88.  Dr. Dunn selected December 2001 as the earliest date that plaintiff would have been disabled.  AR at 285.  The ALJ did not discuss this report.

The failure to discuss Dr. Dunn's March 2005 responses to the MSRFC was error by the ALJ.  Dr. Dunn was a treating physician.  However, in this case, it must be considered harmless error.  In *Carmickle v. Com'mr. Soc. Sec.*, 533 F.3d 1155, 1162, the court summarized the doctrine of evolving harmless-error law:

> [t]he relevant inquiry in this context is not whether the ALJ would have made a different decision absent any error . . . it is whether the ALJ's decision remains legally valid, despite such error.  In *Batson*, we concluded that the ALJ erred in relying on one of several reasons in support of an adverse credibility determination, but that such error did not affect the ALJ's decision, and therefore was harmless, because the ALJ's remaining reasoning and ultimate credibility determination were adequately supported by substantial evidence in the record. 359 F.3d at 1197.  We never considered what the ALJ would do if directed to reassess credibility on remand-we focused on whether the error impacted the validity of the ALJ's decision. *Id.*  Likewise, in *Stout*, after surveying our precedent applying harmless error in social security cases, we concluded that "in each case, the ALJ's error . . . was inconsequential to the ultimate nondisability determination." 454 F.3d at 1055 (emphasis added).

Here, the ALJ relied on contemporaneous notes from Dr. Dunn from a November 2002 evaluation.  The MSRFC is a cursory report with no supporting backup for the December 2001 date, which was prepared more than three years after the plaintiff's DLI.  Under all of the circumstances presented in this case, no reasonable ALJ would have relied on the MSRFC for the onset date rather than on the results of the earlier contemporaneous evaluation.  Consequently, although the ALJ erred in failing to discuss the MSRFC, the error was harmless.

In addition, plaintiff claims that the ALJ failed to address her testimony and that of her husband regarding fatigue and her pharmacy records. That is not correct. The ALJ, citing Dr. Dunn's 2002 evaluation that described her fatigue as "mild" until June 2002 and that she had "an active lifestyle" and had "not yet had to change day-to-day activities because of increasing multiple sclerosis symptoms" rejected the allegations of extreme fatigue as of the DLI. In addition, the plaintiff's pharmacy records demonstrate that although she received a 30-day supply of Provigil in December 2000, she did not refill the prescription until January 2002. AR at 279-78.

The role of this Court is limited. As discussed above, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews*, 53 F.3d at 1039. When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Thomas*, 278 F.3d at 954. The ALJ did not commit reversible error in his evaluation of the medical evidence as to the plaintiff's onset date.

    2.    <u>The ALJ Was Not Required to Call a Medical Expert to Determine the Onset Date</u>

Plaintiff alternatively contends that a medical expert should have been called to determine the onset date. For social security purposes, "the critical date is the date of onset disability, not the date of diagnosis." *Swanson v. Sec. of Health & Human Servs*., 763 F.2d 1061, 1065 (9th Cir. 1985). "The onset date of disability is the first day an individual is disabled as defined in the Act and the regulations." SSR 83-20; *Morgan v. Sullivan*, 945 F.2d 1079, 1081 (9th Cir. 1991). Where, as here, the cause of a plaintiff's disability is not traumatic, a determination of the onset of disability involves primarily an assessment of the

medical evidence.  *See* SSR 83-20.

In this case, there was no requirement that the ALJ call a ME for purposes of determining whether plaintiff was disabled prior to December 31, 2001.  The ALJ properly analyzed and evaluated the medical evidence on this issue.  As discussed above, substantial evidence supports the ALJ's determination, and accordingly must be affirmed.

VIII.  CONCLUSION

This is a difficult case and the plaintiff's non-disputed current disability makes it even more difficult.  Plaintiff left the work force to care for her children, with the intent to return after her children began attending school on a full time basis.  Unfortunately for her, this started the clock ticking toward establishing her DLI.  Whether this is wise public policy is not a matter relegated to this Court.  Compounding the problem is the progressive nature of the disease that plaintiff suffers from.  However, substantial evidence supports the Commissioner's conclusion that plaintiff was not disabled, as that term is defined, before December 31, 2001.  As a result, the Court recommends that this case be AFFIRMED and that the complaint be dismissed with prejudice.

A proposed order accompanies this Report and Recommendation.

DATED this 23rd day of January, 2009.

*James P. Donohue*
_____
JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE – 9